James C. Dale, ISB No. 2902
*Email: jcdale@stoel.com*
STOEL RIVES, LLP
101 S. Capitol Blvd, Ste 1900
Boise, ID 83702
Telephone: (208) 389-9000
Facsimile: (208) 389-9040

James M. Coleman *(Admitted pro hac vice)*
*Email: jcoleman@constangy.com*
Maureen R. Knight *(Admitted pro hac vice)*
*Email: mknight@constangy.com*
CONSTANGY, BROOKS & SMITH, LLP
4100 Monument Corner Drive, Suite 520
Fairfax, VA 22030-8609
Telephone: (571) 522-6100
Facsimile: (571) 5226101

Attorneys for Defendant

### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARISA LANE; CARRIEANNE KOWALCZYK; JOHN DOES 1-100; JANE DOES 1-100,<br><br>                Plaintiffs,<br>v.<br><br>HUMANA MARKETPOINT, INC., a Kentucky Corporation,<br><br>                Defendant. | Case No. 1:09-CV-380<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

SUMMARY OF CASE ............................................................................................... 1

LEGAL STANDARD ................................................................................................. 1

LEGAL ARGUMENTS .............................................................................................. 2

I. .......... PLAINTIFFS SATISFIED THE FLSA'S OUTSIDE SALES EXEMPTION. ................. 2

     A. ........ *Plaintiffs' Primary Duty Was to Make Sales.* .................................................. 2

         1. ........ Plaintiffs' Customer Service Work Was Incidental to and in Conjunction with Their Sales Efforts. ............................................................. 4

         2. ........ Plaintiffs' Customer Service Work Was Related to Their Own Sales/Solicitations. ................................................................... 9

         3. ........ Plaintiffs Satisfy Every Factor Considered by the U.S. Department of Labor and the Courts in Determining Whether an Employee Is an Exempt Outside Salesperson. ........................................................ 9

         4. ........ Even if Their Customer Service Duties Are Considered Non-Exempt, Their Primary Duty Was Still to Make Sales. ........................... 13

     B. ........ *Plaintiffs Were Customarily and Regularly Engaged Away From Defendants' Place of Business in Performing Their Sales Duties.* ........................... 14

II. ........ BECAUSE PLAINTIFFS SATISFIED THE OUTSIDE SALES EXEMPTION UNDER THE FLSA, THEIR STATE LAW CLAIM ALSO FAILS. ............................... 15

III. ...... CONCLUSION ................................................................................. 16

1243501.1

# TABLE OF AUTHORITIES

## Cases

*Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) ...............................................................8

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) ....................................................1

*Delgado v. Ortho-McNeil, Inc.*, No. SACV 07-00263-CJC(MLGx), 2009 WL 2781525 (C.D. Cal. Feb. 6, 2009) ....................................................................................9, 11, 16

*Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 971 (W.D. Tenn. 2003).....................9, 10, 11, 13

*Forsberg v. Pacific N.W. Bell Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir. 1988)................................1

*Hodgson v. Greene's Propane Gas Serv., Inc.,* Civil Action No. 2502, 1971 WL 692, at *7 n. 8 (M.D. Ga. Feb. 16, 1971) ...............................................................................12

*Hodgson v. Krispy Kreme Doughnut Co.,* 346 F. Supp. 1102 (D.C. N.C. 1972)..........9, 11, 12, 13

*Jewell Tea Co. v Williams*, 118 F.2d 202 (10th Cir. 1941) .............................................9, 11, 12, 16

*Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747 (W.D. Mich. 2003)...................................9, 10, 11, 12

*Nynex Long Distance Co.*, 2005 WL 767170 .........................................................passim

*Palmieri v. Nynex Long Distance Co.*, No. Civ. 04-138PS, 2005 WL 767170 (D. Me. March 28, 2005)..........................................................................................................4, 5

*Rodgers v. Basin School Dist. No. 72*, No. CIV04-207-S-EJL, 2006 WL 335453, at *6 (D. Idaho Feb. 13, 2006)..........................................................................................15

*S.A. Empresa v. Walter Kidde & Co.,* 690 F.2d 1235, 1238 (9th Cir. 1982) ................................1

*Schmidt v. Eagle Waste & Recycling*, 598 F. Supp. 2d 928, 936 (W.D. Wis. 2009), *aff'd*, 599 F.3d 626 (7th Cir. 2010)..........................................................................4, 7, 9, 12

*Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944) ................................................8

1243501.1

*Smith v. Micron Electronics, Inc.,* No. CV-01-244-S-BLW, 2005 WL 5328543, at *7 (D. Idaho

    Feb. 4, 2005) ............................................................................................................... 15

*Stevens v. SimplexGrinnell, LLP*, No. 06-11055, 2006 WL 1914247, at *3 (11th Cir. 2006) ........ 4

## Statutes

29 U.S.C. § 204 ................................................................................................................. 8

29 U.S.C. § 207(a)(1) ....................................................................................................... 2

29 U.S.C. § 213(a)(1) ....................................................................................................... 2

## Other Authorities

29 C.F.R. § 541.500(a) ...................................................................................................... 2

29 C.F.R. § 541.500(b) ...................................................................................................... 3

29 C.F.R. § 541.504(a) (2002) ........................................................................................... 5

29 C.F.R. § 541.504(b) ...................................................................................................... 9

29 C.F.R. § 541.700(a) ...................................................................................................... 3

29 C.F.R. § 541.701 ........................................................................................................ 15

29 CFR § 541.504(b) .......................................................................................... 10, 11, 12

Fed. R. Civ. P. 56(c) ......................................................................................................... 1

Fed. R. Civ. P. 56(e) ......................................................................................................... 1

FLSA2007-2, 2007 WL 506575 (Jan. 25, 2007) ............................................................... 4

## SUMMARY OF CASE

This case is very straight-forward.  Plaintiffs allege that they are entitled to overtime under federal law (and therefore owed wages under state law).  There is no question that they are not entitled to overtime if they qualified for the so-called "outside sales" exemption under the federal overtime law.  Notwithstanding the fact that Plaintiffs are the quintessential outside sales people, incredibly they argue in this lawsuit that they are not.  As is clear from the arguments below, Plaintiffs fit squarely within the outside sales exemption and therefore summary judgment should be granted for Defendant.

## LEGAL STANDARD

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Although the Court will view the facts in the light most favorable to the non-moving party when reviewing a summary judgment motion, the nonmoving party "may not rest upon the mere allegations or denials of the [ ] party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  "A party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  *S.A. Empresa v. Walter Kidde & Co.,* 690 F.2d 1235, 1238 (9th Cir. 1982).  Although there may be evidence somewhere within the non-moving party's submitted record that might create a genuine issue of material fact, "[t]he district judge is not required to comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pacific N.W. Bell Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir. 1988).

1

## LEGAL ARGUMENTS

### I.   PLAINTIFFS SATISFIED THE FLSA'S OUTSIDE SALES EXEMPTION.

The Fair Labor Standards Act (FLSA) requires that covered employees who are not otherwise exempt be paid time and one-half their regular rate for all hours worked in excess of forty each workweek. 29 U.S.C. § 207(a)(1). The most common exemptions from this overtime requirement are the so-called "white collar exemptions," which apply to employees employed in the capacity of executive, administrative, professional, and outside sales. 29 U.S.C. § 213(a)(1).

There are regulations, promulgated by the United States Department of Labor, that describe the requirements for satisfying the outsides sales exemption. They provide:

> The term "employee employed in the capacity of outside salesman" in section 13(a)(1) of the Act shall mean any employee:
>     (1)   Whose primary duty is:
>             (i)   making sales within the meaning of section 3(k) of the Act, or
>             (ii)   obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>     (2)   Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a). Therefore, there are two simple elements to the outside sales exemption: making sales and doing so away from the employer's place of business.

#### A.   *Plaintiffs' Primary Duty Was to Make Sales.*

Plaintiffs do not dispute that they made sales as part of their job duties with Defendant. (*See* SOF §§ IV(A) and IV(B).) Indeed, in their Complaint (Docket No. 1:09-CV-380), they assert that their primary duty included selling Defendant's insurance products and servicing those customers who had previously purchased products. Comp. ¶ 7. Given that the overwhelming majority of their compensation was for commissions from the sales they made (*see* Statement of Facts (SOF) § IX), it would be impossible for Plaintiffs to argue otherwise. Despite the overwhelming amount of evidence regarding the importance and prevalence of their

2

sales duties (*see* SOF §§ I through IX) and despite their concession in their Complaint, Plaintiffs appear to argue that making sales was nevertheless not their "primary duty." Rather, Plaintiffs argue that at some point during their employment with Defendant, their service-related duties became their primary duty. This argument is utterly without merit.

The term "primary duty" under the white-collar regulations is defined as follows:

> [A]n employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the *principal, main, major or most important duty* that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the *character of the employee's job as a whole*. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a) (*emphasis added*). As is clearly evident from the Statement of Facts, making sales was the principal, main, and most important duty that Plaintiffs' performed for Defendant. (*See* SOF §§ I through IX.) They were clearly hired to do so, paid to do so, and evaluated and compensated on how well they did so. *Id.*

Furthermore, with regard to the outside sales exemption in particular, the regulations provide that "[i]n determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations ... shall be regarded as exempt outside sales work." 29 C.F.R. § 541.500(b). In other words, when comparing duties that are considered exempt with duties considered non-exempt to determine which group represents the employee's "primary duty," even certain non-sales work qualifies as exempt. As the regulation makes clear, if the non-sales work is (i) incidental to and in conjunction with (ii) the employee's *own* sales or solicitation, it is exempt.

3

1.   **Plaintiffs' Customer Service Work Was Incidental to and in Conjunction with Their Sales Efforts.**

Plaintiffs' job duties fall into three general categories:   direct sales, marketing (to generate sales prospects), and customer service.   The first is obviously exempt sales work, and the second is clearly incidental to and in conjunction with the sales work and therefore also exempt. *See, e.g., Schmidt v. Eagle Waste & Recycling*, 598 F. Supp. 2d 928, 936 (W.D. Wis. 2009), *aff'd*, 599 F.3d 626 (7th Cir. 2010) (holding that marketing work, including attending local Chamber of Commerce meetings and social functions, was directed towards promoting future sales and therefore was exempt).   Plaintiffs appear to argue that the third category is not incidental to and in conjunction with the sales work and therefore is non-exempt.   Even if this were true, the first two categories would still clearly constitute Plaintiffs' primary duty.   (*See* § I(A)(4).)   Nevertheless, their customer service work was, in fact, exempt.

At least three federal courts *and* the United States Department of Labor itself have held that customer service duties for a sales employee's own customers are incidental to and in conjunction with their sales work and therefore is exempt work.   *Stevens v. SimplexGrinnell, LLP*, No. 06-11055, 2006 WL 1914247, at *3 (11th Cir. 2006); *Palmieri v. Nynex Long Distance Co.*, No. Civ. 04-138PS, 2005 WL 767170 (D. Me. March 28, 2005); *Schmidt v. Eagle Waste & Recycling*, 598 F. Supp. 2d 928 (W.D. Wis. 2009, *aff'd*, 599 F.3d 626 (7th Cir. 2010); FLSA2007-2, 2007 WL 506575 (Jan. 25, 2007).

First, the United States Court of Appeals for the Eleventh Circuit analyzed the same argument advanced by Plaintiffs in the instant case, namely that service-related duties for existing customers are not incidental to an employee's sales duties and therefore are non-exempt. *Stevens v. SimplexGrinnell, LLP*, No. 06-11055, 2006 WL 1914247, at *3 (11th Cir. 2006).   That court concluded that "[a]lthough [the plaintiff] also provided service to existing customers, this

4

duty was 'incidental to and in conjunction with the employee's own outside sales' because the service that [the plaintiff] provided to these customers furthered her ability to make sales that increased her commission." *Id.*

Second, a federal court in Maine also had occasion to consider a plaintiff's argument that his customer service-related tasks removed him from the outside sales exemption. *Palmieri v. Nynex Long Distance Co.*, No. Civ. 04-138PS, 2005 WL 767170 (D. Me. March 28, 2005). In *Nynex*, the plaintiff was assigned customers with existing service issues, to whom he did not make the sale (and therefore did not make a commission) and to whom he had no hope of making new sales. *Id.* at *14. He spent seventy percent of his time on customer service duties. *Id.* The court held that the key determinant, "for purposes of the incidental to prong, is whether the time in question is spent on promoting the employer's business in general or is devoted strictly to the salesman's own customers." *Id.* at *14 (citing 29 C.F.R. § 541.504(a) (2002)). Therefore, because the plaintiff's customer service activities were for his own customers, they were exempt, even though they were not legitimate sales prospects. *Id.* ("relevant regulations do not indicate that tasks must be fruitful in producing sales, or even that there must be a legitimate prospect of a sale at the end of the day, to be deemed incidental to and in conjunction with outside sales work.") It was enough that the plaintiff hoped to one day sell additional products to these customers. *Id.*

Unlike in *Nynex*, Plaintiffs can and did make sales to the overwhelming majority of individuals to whom they provided customer service. (*See* SOF § X.) As the *Nynex* court noted:

> [A sales person] has reason to ensure that his clients received satisfactory customer service. Without assuagement of their service concerns, existing customers would not have been inclined to purchase further [] services or products [from the company]. The question of responsiveness to service issues could not be neatly divided from that of the prospect of repeat sales.

5

*Id.* at *14.

This link between customer satisfaction and repeat sales was of course significant to Plaintiffs' positions, as well, as they acknowledged. (*See* SOF § X.) Indeed, this link is even more significant in the instant case than in the *Nynex* and *SimplexGrinnell* cases discussed above because Plaintiffs received a monthly retention commission for maintaining their customers on their plans. (*See* SOF § IX.) *Cf. Nynex Long Distance Co.*, 2005 WL 767170 at *14 (explaining that the bank of customers assigned to the plaintiff for customer service represented the opportunity for sales only if they bought additional goods or services from the company, beyond the existing contract). Moreover, every year Plaintiffs had the opportunity to sell their customers into a different plan, which would then pay an initial commission as if they were a new customer. (*See* SOF § X.) In addition, every customer represents a sales opportunity throughout the year for any of Defendant's numerous non-Medicare-related products, such as life insurance and annuities. (*See* SOF § I.) Finally, unlike in *Nynex* and *SimplexGrinnell*, Plaintiffs relied on their existing customers for referrals and therefore their continued satisfaction was critical. (*See* SOF §§ VIII and X.) *Cf. Nynex Long Distance Co.*, 2005 WL 767170 at *13 (noting that the plaintiff is precluded from seeking out new sales).

In addition, Plaintiffs' argument that at some point their primary duty for the company went from generating sales to handling customer service is belied by the fact that Defendant has always employed an extremely robust customer service department. (*See* SOF § X.) *See Nynex Long Distance Co.*, 2005 WL 767170 at *14 ("While [the company] surely appreciated the obvious linkup between responsive customer service and repeat sales, there is no dispute that, at all relevant times, it maintained a separate customer-service department tasked not only to resolve but also to field customer-service issues.") Plaintiffs have proffered no evidence,

1243501.1

because none exists, that Defendant attempted to shift its customer service tasks from the robust customer service department to the sales force. Sales Director Edward DeVincentis explained that when a Sales Agent takes a call from a customer, he or she "really has no mechanical structure to actually fix a service problem beyond getting it to the people that can. So the agents really work as a liaison between the customer and the corporation to provide clear communications." *See* Ex. 8 to Statement of Facts, , Dep. Tr. of Ed. DeVincentis at 48:14-19 (hereinafter DeVincentis). Plaintiff Lane expressed the same sentiment, testifying that she had "very little power to fix anything," so her role was "mostly … to be an emissary for the company that we are working hard, we're trying to get these issues taken care of and just trying to keep a good face on it." *See* Ex. 3 to Statement of Facts, Dep. Tr. of Marisa Lane 58:22-59:1 (hereinafter Lane). This is precisely what any good sales person would be expected to do.

Third, in a case affirmed by the United States Court of Appeals for the Seventh Circuit earlier this year, a federal court in Wisconsin also concluded that customer service work constitutes exempt sales-related work for an outside sales person. *Schmidt v. Eagle Waste & Recycling*, 598 F. Supp. 2d 928 (W.D. Wis. 2009), *aff'd*, 599 F.3d 626 (7th Cir. 2010). In that case, an account representative was charged with responding to customers to resolve any service problems they had. *Id.* at 933. Unlike in the instant case, there was no record that the employer in that case even had a customer service department. The district court determined that her activities involving "resolving account or service disputes in order to retain her customers and make sure they paid their bills promptly … directly affected the commission payments she received." *Id.* at 936. The court concluded that these customer service activities indirectly related to her sales and benefitted her sales activities. *Id.*

7

Lastly, as with the three courts described above, the Wage and Hour Division of the United States Department of Labor has also explained that customer service duties made after a sale are also sales-related and therefore exempt. For purposes of administering and enforcing the FLSA with respect to private employment, Congress created the Wage and Hour Division. 29 U.S.C. § 204. The U.S. Supreme Court has instructed, "the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)). In an Opinion Letter dated January 25, 2007, the Division stated that "meeting with customers, real estate sales employees, construction personnel, and others to ensure customer satisfaction through the sale and <u>construction</u> of the new home" is a sales-related activity for sales employees selling new homes. FLSA2007-2, 2007 WL 506575 (Jan. 25, 2007) (<u>emphasis added</u>). Such customer service meetings throughout and after the sale to ensure customer satisfaction are identical to the customer service responsibilities of Plaintiffs, with the only difference being that, here, Plaintiffs are actually paid a monthly retention commission for maintaining such customer satisfaction and Plaintiffs' customers represent regular and repeated potential new sales. (*See* SOF §§ VIII and IX.)

Even Plaintiffs' former Sales Manager, who was fired by Defendant and deposed in this matter pursuant to Plaintiffs' subpoena, explained that sales was always the primary responsibility of the Sales Agents. She explained that "customer service became more intense in early 2007 because Defendant had a change in product. But the pressure for maintaining the client base as well as new sales did not diminish. That was there from the top down all along." *See* Ex. 4 to Statement of Facts, Dep. Tr. of Julia Fenwick, at 65:14-24 (hereinafter Fenwick).

8

2.      **Plaintiffs' Customer Service Work Was Related to Their Own Sales/Solicitations.**

The overwhelming majority of customer service issues that Plaintiffs handled were for their own sales. (*See* SOF § X.) As the courts in the *Nynex* and *SimplexGrinnell* cases described above noted, the dispositive issue on whether non-sales duties are considered exempt or non-exempt is whether the duties were related to sales that might have been made by someone else, or sales that might have been made by the employee in question. *Nynex Long Distance Co.*, 2005 WL 767170 at *14. Here, that answer is clear. With regard to customer service duties for their own customers (which represented the overwhelming majority of such duties), Plaintiffs were the ones who would receive the retention commissions and Plaintiffs were the ones who would attempt to obtain renewals and other sales. (*See* SOF § IX.)

3.      **Plaintiffs Satisfy Every Factor Considered by the U.S. Department of Labor and the Courts in Determining Whether an Employee Is an Exempt Outside Salesperson.**

The United States Department of Labor and numerous courts have articulated several factors that should be considered in deciding whether an employee's primary duty is sales.[1] 29 C.F.R. § 541.504(b); *Nynex Long Distance Co.*, 2005 WL 767170; *Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 971 (W.D. Tenn. 2003); *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747 (W.D. Mich. 2003); *Hodgson v. Krispy Kreme Doughnut Co.*, 346 F. Supp. 1102 (D.C. N.C. 1972); *Jewell Tea Co. v Williams*, 118 F.2d 202 (10th Cir. 1941); *Delgado v. Ortho-McNeil, Inc.*, No. SACV 07-00263-CJC(MLGx), 2009 WL 2781525 (C.D. Cal. Feb. 6, 2009). Applying these

---

[1] Although referring to delivery drivers who may qualify as outside salespersons, Section 541.504(b) of Title 29 of the Code of Federal Regulations has been cited by numerous courts in reference to outside sales positions in general, not just in cases involving delivery driver salespersons. *Nynex Long Distance Co.*, 2005 WL 767170 at *13; *Nielsen*, 302 F. Supp. 2d at 758; *Schmidt*, 598 F. Supp. 2d at 929.

9

factors to Plaintiffs' employment makes the result unmistakable: sales is their primary duty. The factors include:

> Possession of a Selling or Solicitor's License When Such License Is Required by Law or Ordinances. (*See* 29 CFR § 541.504(b).) Plaintiffs both possessed licenses allowing them to sell insurance. (*See* SOF § II.)

> Description of the Employee's Occupation in Collective Bargaining Agreements/Hired and Denominated as a Salesman. (*See* 29 CFR § 541.504(b); *Nynex Long Distance Co.*, 2005 WL 767170 (citing *Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 971, 974 (W.D. Tenn. 2003).) In every conceivable location and fashion, Plaintiffs' occupation is described as a sales position. (*See* SOF § II.)

> The Employer's Specifications as to Qualifications for Hiring/Position Advertised as a Sales Position. (*See* 29 CFR § 541.504(b); *Fields,* 261 F. Supp. 2d at 974 (citations omitted).) Defendant's specifications for hiring individuals into the Sales Agent position made it abundantly clear that the position is a sales position. The job posting for their position asked, "Are you a motivated and goal oriented sales professional with a demonstrated capacity to excel?" (*See* Ex. 6 to SOF (emphasis added).) Moreover, the job was summarized with four bullet points, *every* one of which is sales: (1) *Prospect* and *enroll* eligible individuals in the Medicare Advantage Private Fee for Service (PFFS), Medicare PPO and HMO plans; (2) *Market* long-term care, life insurance, and other specialty products for the 50+ population; (3) Conduct one-on-one and group *presentations for potential customers*; and (4) *Generate sales leads* from various sources. (*Id.*) Finally, Plaintiffs had extensive sales experience prior to coming to work for Defendant. (*See* SOF § II.) *See Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 756-58 (W.D. Mich. 2003) ("An employee is more likely to be considered engaged in sales if the job was

10

advertised as a sales position and the employee was recruited based on sales experience and abilities.") (citing *Hodgson v. Krispy Kreme Doughnut Co.,* 346 F. Supp. 1102, 1106 (D.C. N.C. 1972); *Jewell Tea Co. v Williams*, 118 F.2d 202, 208 (10th Cir. 1941)).

> Receipt of Sales Training. (*See* 29 CFR § 541.504(b); *Nynex Long Distance Co.*, 2005 WL 767170 (citing *Fields*, 261 F. Supp. at 974); *Nielsen*, 302 F. Supp. 2d at 756.) At their hire, Plaintiffs attended a three-week training course on selling Defendant's products. (*See* SOF § III.) Thereafter, they attended additional sales training throughout their employment. (*See* SOF § III.)

> Attendance at Sales Conferences. (*See* 29 CFR § 541.504(b).) Plaintiffs attended weekly sales meetings with the Sales Manager. (*See* SOF § III.) At these meetings with the Sales Manager and other Sales Agents, they discussed issues such as new product rollout, expectations, and sales numbers. (*See* SOF § III.)

> Method of Payment. (*See* 29 CFR § 541.504(b); *Nielsen*, 302 F. Supp. 2d at 756.) The overwhelming majority of the compensation Plaintiffs received was commission directly related to their sales. (*See* SOF § IX.) "Compensation based wholly or in significant part on commissions correlates with a finding that the employee does sales work." *Nielsen*, 302 F. Supp. at 757 (citing *Fields,* 261 F. Supp. 2d at 975). As a fellow federal district court in the Ninth Circuit noted with regard to an exempt outside sales person: "If they hustled more ... [they] made more. The object of their harder work wasn't to garner overtime, it was to generate sales." *Delgado v. Ortho-McNeil, Inc.*, No. SACV 07-00263-CJC(MLGx), 2009 WL 2781525, at *3 (C.D. Cal. Feb. 6, 2009). Similarly, as the Tenth Circuit has noted, "[i]n lieu of overtime, [the outside sales person] ordinarily receives commissions as extra compensation ... To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the

11

individual character of the work of an outside sales man." *Jewell Tea*, 118 F.2d 202 (10th Cir. 1941).

> Proportion of Earnings Directly Attributable to Sales. (*See* 29 CFR § 541.504(b); *Nielsen v. Devry, Inc.*, 302 F. Supp. 2d 747, 756 (W.D. Mich. 2003)) In 2007 and 2008, Plaintiffs' commissions represented between 65 and 69 percent of their total earnings. (*See* SOF § IX.) This proportion is far greater than in other cases in which the court has held that the outside sales exemption applied. *See, e.g., Nynex Long Distance Co.,* 2005 WL 767170 at *13 (percentage of compensation that constituted commissions was 45 percent or less); *Nielsen*, 302 F. Supp. 2d at 757 (plaintiffs not even paid on a commission, salary merely fluctuated periodically based on sales); *Hodgson v. Greene's Propane Gas Serv., Inc.,* Civil Action No. 2502, 1971 WL 692, at *7 n. 8 (M.D. Ga.   Feb. 16, 1971) (salespersons typically earned commissions ranging from 17 percent to 32 percent of their total salaries); *Schmidt*, 598 F. Supp. 2d at 936 (less than one-third of the plaintiff's compensation was from commission).

> Lack of Direct or Constant Supervision. (*See Nynex Long Distance Co.,* 2005 WL 767170, at *12 (citing *Nielsen,* 302 F. Supp. 2d at 756 (citations omitted).) Plaintiffs were not subject to direct or constant supervision. (*See* SOF § VI.)   With the exception of an occasional ride-along by the Sales Manager, they worked on their own. (*Id.*)  "An employee who receives little or no direct or constant supervision in carrying out daily work tasks is more likely to be considered engaged in sales." *Nielsen*, 302 F. Supp. at 757; *See also Hodgson,* 346 F. Supp. at 1104-06 (employees determined their starting time, work pattern, and number of hours were exempt outside sales people, although they were required to report to a supervisor on an almost daily basis and regularly meet with supervisors on a weekly or at least monthly basis).

12

> Requirement to Solicit New Business. (*See Nynex Long Distance Co.*, 2005 WL 767170 (citing *Fields*, 261 F. Supp. at 974).) Plaintiffs were required to, and regularly did, solicit new business. (*See* SOF § VIII.) Indeed, Defendant's Sales Director testified that the goal is that Sales Agents make fifty percent of their sales through their own solicitation and referral efforts, with the remaining fifty percent coming from company-generated leads. DeVincentis 36:15-23.

In summary, there is not a *single* factor that is mentioned by any court or the United States Department of Labor that does not weigh in favor of a finding that Plaintiffs clearly qualify for the outside sales exemption from the FLSA. Courts have cautioned that none of the indicia of sales-relatedness can be considered in isolation, and that the court must consider the totality of the circumstances in a task-related context. *See Hodgson v. Krispy Kreme Doughnut Co.,* 346 F. Supp. 1102, 1103 (M.D.N.C. 1972). In totality, the decision is that much clearer. Plaintiffs were outside sales people.

**4.      Even if Their Customer Service Duties Are Considered Non-Exempt, Their Primary Duty Was Still to Make Sales.**

Even if the customer service duties were somehow deemed nonexempt – which clearly they were not – they still did not represent Plaintiffs' primary duty for Defendant. As is clearly evident from the Statement of Facts, making sales was the principal, main, and most important duty that Plaintiffs' performed for Defendant. (*See* SOF §§ I through IX.) They were clearly hired to do so, paid to do so, and evaluated and compensated on how well they did so. *Id.* They were not compensated on how well they performed their customer service duties, save for the fact that excellent customer service would increase retention sales, recurring sales, and referrals to new sales. (*See* SOF §§ IX through X.) Further evidence that making sales was Plaintiffs' primary duty is their supervisors' emphasis on sales in evaluating their performance. For

13

instance, Plaintiffs' original Sales Manager testified that she tracked each Sales Agent's sales on a daily basis.   Fenwick 12:11-13.   Moreover, when Plaintiffs' performance was formally evaluated, it was their sales skills that were evaluated, not their customer service skills.   Buss II 7:21-8:24, 52:8-23.   Plaintiffs' performance was measured on their sales, and the Sales Manager's goals and objectives were tied to the total amount of sales in his or her market. Fenwick 24:20-21.

Plaintiffs' former Sales Manager, who, again, was deposed at their request and who had been fired by Defendant, herself summed-up Plaintiffs' duties as "sales, first and foremost." Fenwick 27:11-14.   Ms. Fenwick described the various sales activities – making calls to leads, attending appointments with potential customers, conducting public presentations – and concluded that "it was at every opportunity, it was a sales opportunity."   Fenwick 27:14-21.   Ms. Fenwick testified that this was true even during the off-peak sales season, when Sales Agents had to be more aggressive because their sales quotas did not decrease.   Fenwick 27:22-25.

### B.   *Plaintiffs Were Customarily and Regularly Engaged Away From Defendants' Place of Business in Performing Their Sales Duties.*

There is no dispute that Plaintiffs were customarily and regularly engaged away from their offices in performing their sales duties.   Both Plaintiffs testified that the ideal location for conducting a sales presentation is the customer's home, although they also occasionally conducted such presentations at other public locations.   (*See* SOF § VI.)   Both Plaintiffs testified that their offices were their homes, and neither ever did a sales presentation in her home.   (*See* SOF § VI.)   Further evidence of the "outside" nature of their sales activities was that Plaintiffs were given a car allowance as a reflection of the fact that their positions required regular travel and a communication allowance to facilitate mobile communication during their travel.   (*See* SOF § VI.)

14

Although likely *all* of Plaintiffs' sales activities occurred outside of their offices, it is significant to note that the regulation requires only that such activities occur outside of their offices "customarily and regularly," a frequency that must be greater than occasional but which may be less than constant. 29 C.F.R. § 541.701. The regulation states that "[t]asks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." *Id.* Clearly Plaintiffs' recurring sales activities in customer's home and in other public places more than satisfies this standard.

## II.     BECAUSE PLAINTIFFS SATISFIED THE OUTSIDE SALES EXEMPTION UNDER THE FLSA, THEIR STATE LAW CLAIM ALSO FAILS.

Count II of Plaintiffs' Complaint asserts a generic claim under Idaho state law for unpaid wages, although they do not specify which provision of that law they allege was violated. Because Plaintiffs allege no additional facts in support of this state law claim, Defendant assumes that Plaintiffs allege that because they believe they were entitled to overtime under the federal law, they were therefore also owed these same alleged overtime wages under the state law. Accordingly, because Plaintiffs are in fact exempt from the overtime provisions of the federal law, there are no wages due under state law. *See Rodgers v. Basin School Dist. No. 72*, No. CIV04-207-S-EJL, 2006 WL 335453, at *6 (D. Idaho Feb. 13, 2006) (adopting summary judgment ruling as to FLSA claim for Idaho state law claim); *see also Smith v. Micron Electronics, Inc.,* No. CV-01-244-S-BLW, 2005 WL 5328543, at *7 (D. Idaho Feb. 4, 2005) (holding that a finding of liability under the FLSA would consequently mean liability under Idaho state law, and therefore damages under state law would be offset by any recovery under the FLSA).

15

## III.   CONCLUSION

When Congress determined that outside sales people should not be covered by the overtime requirements, it did so because the nature of their position was incompatible with hourly timekeeping and additional compensation for additional hours worked.   As the United States Court of Appeals for the Tenth Circuit explained:

> The reasons for excluding an outside salesman are fairly apparent. Such [a] salesman, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

*Jewell Tea Co. v. Williams*, 118 F.2d 202, 207-08 (10th Cir. 1941).

Another District Court in the Ninth Circuit reasoned that this holding in *Jewell Tea* is "obviously driven by the common-sense notion that it is impractical to make outside salespeople hourly employees due to the lack of supervision and structure in their jobs, and because they generate additional incentive income, usually through commission, instead of overtime." *Delgado*, 2009 WL 2781525, at *3-4.  This is precisely the case with Plaintiffs.

RESPECTFULLY SUBMITTED,

DATED:  December 17, 2010

STOEL RIVES, LLP

James C. Dale, ISB No. 2902
101 S. Capitol Blvd, Ste 1900
Boise, ID 83702
Telephone:  (208) 389-9000
Facsimile:  (208) 389-9040

16

CONSTANGY, BROOKS & SMITH, LLP

James M. Coleman *(Admitted pro hac vice)*
Maureen R. Knight *(Admitted pro hac vice)*
4100 Monument Corner Drive, Suite 520
Fairfax, VA 22030-8609
Telephone: (571) 522-6100
Facsimile: (571) 522-6101

17

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2010, I served a copy of the foregoing document on

CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:


Julie Klein Fischer – jfischer@morrowfischer.com
Shelli D. Stewart – sstewart@morrowfischer.com

James G. Dale

18

1243501.1