James C. Dale, ISB No. 2902
*Email:  jcdale@stoel.com*
STOEL RIVES, LLP
101 S. Capitol Blvd, Ste 1900
Boise, ID 83702
Telephone:  (208) 389-9000
Facsimile:  (208) 389-9040

James M. Coleman *(Admitted pro hac vice)*
*Email: jcoleman@constangy.com*
Maureen R. Knight *(Admitted pro hac vice)*
*Email: mknight@constangy.com*
CONSTANGY, BROOKS & SMITH, LLP
4100 Monument Corner Drive, Suite 520
Fairfax, VA 22030-8609
Telephone: (571) 522-6100
Facsimile: (571) 5226101

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARISA LANE; CARRIEANNE KOWALCZYK; JOHN DOES 1-100; JANE DOES 1-100, | Case No. 1:09-CV-380 |
| Plaintiffs, <br> v. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| HUMANA MARKETPOINT, INC., a Kentucky Corporation, | |
| Defendant. | |

Defendant hereby files its Reply Brief in response to Plaintiffs' Memorandum in Response to Defendant's Motion for Summary Judgment.  For the reasons set forth below and in its original Memorandum in Support for Defendant's Motion for Summary Judgment, Plaintiffs have failed to establish that there are any material facts in dispute that would preclude a finding that Plaintiffs are exempt from the overtime requirements of the Fair Labor Standards Act under the outside sales exemption.

I.    ***The Facts Establishing that Plaintiffs Satisfy the Outside Sales Exemption Remain Undisputed.***

Nearly all of Defendant's facts supporting its Motion for Summary Judgment remain undisputed by Plaintiffs and therefore are admitted for purposes of the Court's evaluation of this Motion.  For instance, Plaintiffs do not dispute any of Defendant's facts that describe that Plaintiffs were employed as Sales Representatives; that Plaintiffs sold insurance products all year long; that the heavy season for sales of the Medicare products was November 15 through March 31; that they could nevertheless sell the Medicare products all year to various newly-eligible individuals; and that Plaintiffs were required to sell other non-Medicare products year-round. *See* SOF[1] § I.  Furthermore, Plaintiffs do not dispute that they were recruited and hired as sales people; that they worked as sales people both before and after their employment with Defendant; and that Plaintiffs received extensive sales training both at their hire and throughout their employment.  *See* SOF §§ II and III.

Regarding their job duties, Plaintiffs do not dispute that they engaged in substantial sales activities throughout their employment, including regularly conducting two- to three-hour sales presentations to potential customers at the customers' homes or in public locations (up to four to five times a day during peak sales season); conducting lengthy sales presentations to small and

---

[1] *Statement of Undisputed Facts in Support of D.'s Mot. for Summ. J.*, Doc. No. 37.

large groups of potential customers, also in public settings such as restaurants and hotels; conducting or attending various other events for existing customers that qualify as sales events under the governing federal regulations; and engaging in other marketing efforts, such as going to doctors' offices and senior centers, attending community events, and throwing ice cream socials to prospect for potential sales customers.  *See* SOF §§ IV.A and IV.B.  Plaintiffs do not dispute the accuracy of their former Sales Manager's characterization of these marketing and soliciting activities as "feathering the nest," "keep[ing] your leads," and "keep[ing] your pipeline full, keep[ing] out in front of people."  *See* SOF § IV.B.  And, despite Plaintiffs' unsupported conclusory statement that they were prohibited from soliciting new customers, they do not dispute that they prospected for new customers through referrals from existing customers, people they met while they worked at a booth in Walmart, referrals from the Walmart pharmacists, and leads generated by Defendant.  *See* SOF § VIII.

As to their typical work day, Plaintiffs do not dispute that Plaintiff Lane typically worked at Walmart for three hours, after which she would conduct sales appointments, meet with existing customers, and do marketing, and, if she worked on Saturdays, she was doing sales presentations, attending ice cream socials, and attending other public outreach events.  *See* SOF § V.  And Plaintiffs do not dispute that, during the peak sales season, Plaintiff Kowalczyk typically worked at Walmart for four hours (during which she might give sales presentations or make appointments to give sales presentations), after which she would try to conduct four to five sales presentations in potential customer's homes (each of which lasted two hours).  *See* SOF § V.  If Plaintiff Kowalczyk worked on Saturdays, it was to give sales presentations in customer's homes or meet customers in coffee shops.  *See* SOF § V.

2

Despite the fact that Plaintiffs characterize their supervisor's efforts at tracking their sales activity as direct and constant supervision, they do not dispute that other than occasional ride-alongs with their Sales Manager to give them feedback, Plaintiffs worked on their own for their sales work and sales presentations. *See* SOF § VI. And Plaintiffs do not dispute that they have several performance measures, including sales activities and timely submission of sales applications, but that responding to customer service issues is not one of their performance measures and is not monitored (with the exception of perhaps a customer complaint). *See* SOF § VI. Moreover, Plaintiffs do not dispute that they had access to a "plethora of different sales tools" and sales equipment, or that they were reimbursed for numerous sales activities expenses and given a $350 per month car allowance because their positions required regular travel for these outside sales activities. *See* SOF § VII.

Finally, Plaintiffs do not dispute that Plaintiff Lane's commissions represented 68 percent of her earnings in 2007 and 65 percent of her earnings in 2008; Plaintiff Kowalczyk's commissions represented 69 percent of her earnings in 2007 and 68 percent of her earnings in 2008; and that they received a retention commission each month for every customer who continued on the plan they sold. *See* SOF § IX. And Plaintiffs do not dispute that to retain customers, Plaintiff Kowalczyk returned phone calls from customers in a timely manner, sent birthday cards, and kept a "presence, being at the Walmart," and that service calls from customers allowed her to keep in contact with her customers. *See* SOF § IX. Lastly, Plaintiffs do not dispute that keeping existing customers happy was important to their sales efforts, both because the customer could drop the insurance (cutting off commissions) and because existing customers were a referral source for new customers. *See* SOF § X.

3

## II.   *Plaintiffs' Alleged Disputed Facts Are Either Conclusory and Not Supported by the Record or Immaterial to Defendant's Motion.*

Against this boldly painted canvas of facts undisputed by Plaintiffs, Defendant turns to those which Plaintiffs allege support an image that they are not, in fact, salespeople.  As will be shown, each such fact is either a conclusory statement not supported by the record or is not material to Defendant's Motion for Summary Judgment.

### A.   Customer Service Was Not Plaintiffs' Primary Duty.

Despite the plethora of facts that make clear that sales were the most important aspect of their job, Plaintiffs argue in their Opposition that their primary duty was customer service. Plaintiffs cannot escape summary judgment simply by asserting the conclusory statement that "the primary focus of their employment was customer service."  Pls.' Statement of Disputed Facts (Doc. No. 40) (hereinafter Pls.' SDF) at ¶ 1.[2]  *See S.A. Empresa v. Walter Kidde & Co.,* 690 F.2d 1235, 1238 (9th Cir. 1982) ("A party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda.")  The authority cited for Plaintiffs' conclusion includes no quantification of the amount of time spent on customer service and simply states that at some point in Plaintiff Lane's employment, it was "full on customer service firestorming."   Lane Dep. Tr. at 57:17-22, attached to Pls.' SDF at Ex. B.   Plaintiffs' commissions through their employment belie any notion that customer service responsibilities eclipsed their sales duties.  As stated previously, Plaintiff Lane's commissions represented 68 percent of her earnings in 2007 and 65 percent of her earnings in 2008, and Plaintiff Kowalczyk's commissions represented 69 percent of her earnings in 2007 and 68 percent of her earnings in 2008.

---

[2]   Plaintiffs also provide no support for their bald allegations that Defendant "announced that customer service and marketing the Humana brand was the most important of Plaintiffs' duties."  Pls.' Mem. at p. 10.  There was clearly no such announcement.

As mentioned in Defendant's original brief in support of their Motion for Summary Judgment, the basis for some of these ludicrous statements regarding customer service being their primary function may be Plaintiffs' distorted definition of customer service.  For instance, when describing when her job became more of a customer service job, Plaintiff Lane testified "It became more of a customer service based position where there was more reporting, <u>more contacting previous, your client base, to see if you could sell other products or fulfill some other needs besides just the Medicare Advantage Plan</u>, just trying to keep a face, a public persona.  Also some community outreach programs, brand recognition programs, that sort of thing.   It became more of a customer service based position."  Lane Dep. Tr. at 60:3-12, attached to Pls.' SDF at Ex. B (<u>emphasis added</u>).   What Plaintiff Lane describes are sales-related activities designed to maintain an existing customer, sell new or additional products to existing customers, or find prospective customers.   *See, e.g., Schmidt v. Eagle Waste & Recycling*, 598 F. Supp. 2d 928, 936 (W.D. Wis. 2009), *aff'd*, 599 F.3d 626 (7th Cir. 2010) (holding that marketing work, including attending local Chamber of Commerce meetings and social functions, was directed towards promoting future sales and therefore was exempt).

***The Overwhelming Majority of Plaintiffs' Training Was Related to Sales.***  Plaintiffs allege in their Statement of Disputed Facts that "in conjunction with their sales training throughout their employment with Humana, Plaintiffs also received extensive customer service training."   Pls.' SDF at ¶ 2.   Yet the testimony to which they cite for this statement regarding "extensive customer service training," describes a *single* training event regarding the roll-out of Defendant's "perfect service" concept to every employee of Defendant.  *See* Kowalczyk Dep. Tr. at 64:22-65:8, attached to Pls.' SDF at Ex. C; Lane Dep. Tr. at 115:3-5, attached to Pls.' SDF at Ex. B.   When comparing this solitary event to the *truly* extensive sales training that Plaintiffs

5

undisputedly received throughout their employment (*see* SOF § III), the conclusion is clear that sales was their primary duty.

   ***The Courts and the Department of Labor Have Held that Customer Service Duties for a Sales Employee's Own Customers Are Exempt Duties.*** As for legal arguments, Plaintiff correctly cites to the regulations that provide that duties that are "incidental to" the employee's exempt sales duties (and therefore exempt, as well) include duties that "further[] the employee's sales efforts." Pls.' Mem. in Resp. to D.'s Mot. for Summ. J. (Docket No. 40) (hereinafter Pls.' Mem.) at p. 11. Plaintiff Kowalczyk herself testified that she maintained her relationship with her clients – a relationship that resulted in monthly commissions, the prospect for new sales each enrollment period, and the opportunity for referrals to potential customers – by staying in touch with her clients and that their customer service queries provided her the opportunity to do so. Clearly such activities "furthered [Plaintiffs'] sales efforts" and are therefore exempt.

   Plaintiffs criticize Defendant for being "a bit too eager to rely" on the three federal court decisions (two of which are from United States Courts of Appeals) that held that customer service duties were incidental to sales duties and therefore exempt. Pls.' Mem. at p. 11. Plaintiffs argue that other circuit case law "is not necessarily meaningful in determining whether Plaintiffs were exempt employees." *Id.* Plaintiffs are noticeably silent, however, on *any* contrary case law to support their apparent position that handling a customer service issue for an existing customer is not incidental to the salesperson's sales duties. They cite to not a *single* case supporting this argument, because there is none.

   Furthermore, Plaintiffs' attempts to distinguish two of the cases cited by Defendant are unavailing. *Stevens v. SimplexGrinnell, LLP*, No. 06-11055, 2006 WL 1914247, at *3 (11th Cir. 2006) and *Palmieri v. Nynex Long Distance Co.*, No. Civ. 04-138PS, 2005 WL 767170 (D. Me.

March 28, 2005).  As to *Stevens*, Plaintiffs argue that there is no evidence in the instant case that Plaintiffs' customer service activities "furthered [their] ability to make sales that increased [their] commission."  Pls.' Mem. at p. 12.  But Plaintiffs have given testimony regarding the customer service work provided by them that furthered their ability to make sales that increased their commissions.  Specifically, Plaintiff Kowalczyk testified that in order to retain her relationships with customers she returned phone calls from customers in a timely manner and that service calls from customers allowed her to keep in contact with her customers.  Plaintiff Lane testified that keeping existing customers happy was important to her sales efforts, both because the customer could drop the insurance (cutting off commissions) and because existing customers were a referral source for new customers.

Plaintiffs attempt to distinguish *Palmieri* on the basis that the court noted that the customer service work performed by the plaintiff was for his own customers.  Plaintiffs ignore the fact that Plaintiff Kowalczyk testified that *ninety percent* of the customer service work she performed was for her own customers.  Plaintiff Lane has provided no testimony to the contrary. Indeed, other than the occasional question they may receive from another Sales Representative's client as a result of that client having received their business card at a group seminar, Plaintiffs testified that the only other time they handled customer service issues for customers other than their own was during their Walmart hours.  Given that Plaintiffs worked only approximately 15 hours per week at Walmart and that they also engaged in other direct sales duties while there (such as conducting sales presentations, arranging for meetings with existing customers, and responding to service issues from existing customers who knew their hours at Walmart and would come by unannounced), responding to questions from individuals who were not their own customers must necessarily represent much less than 15 hours per week.  Correspondingly, given

7

Plaintiffs' testimony that they worked 60 to 80 hours per week, clearly this amount of time which has to be far less than 15 hours per week could not possibly constitute their primary duty.

While Plaintiffs unconvincingly attempt to distinguish *Stevens* and *Palmieri*, Plaintiffs make no effort to distinguish the other federal court case Defendant cited (affirmed by the United States Court of Appeals for the Seventh Circuit), nor the formal opinion letter of the Wage and Hour Division of the United States Department of Labor, both of which make it clear that customer service-related tasks for one's own customers are incidental to sales duties and therefore exempt. *Schmidt v. Eagle Waste & Recycling*, 598 F. Supp. 2d 928 (W.D. Wis. 2009), *aff'd*, 599 F.3d 626 (7th Cir. 2010); FLSA2007-2, 2007 WL 506575 (Jan. 25, 2007).

B. ***Plaintiffs' Argument Regarding Their Level of Supervision Is Unavailing.***

Plaintiffs' argument that they were "closely monitored" by their supervisor is also unpersuasive. Pls.' Mem. at pp. 5, 17-18. First, there is no statutory or regulatory requirement that an exempt outside salesperson have complete autonomy in order to satisfy the exemption. Rather, amount of supervision is but one factor (none of which are dispositive) that has been considered by at least two courts when determining whether the exemption is appropriate. *See Nynex Long Distance Co.*, 2005 WL 767170, at *12 (citing *Nielsen,* 302 F. Supp. 2d at 757) ("An employee who receives little or no direct or constant supervision in carrying out daily work tasks is more likely to be considered engaged in sales."). Second, Plaintiffs themselves have testified that other than occasional ride-alongs with their Sales Manager to give them feedback, Plaintiffs worked on their own for their sales work and sales presentations. Lastly, in their Opposition at page 5, every single example that Plaintiffs give of the monitoring by the Sales Manager is wholly and entirely related to their sales: "delivering leads to Plaintiffs, scheduling

8

and tracking their appointments and seminars, and monitoring their daily reporting."  Pls.' Mem. at p. 5.

      **C.**     ***Plaintiffs' Alleged Limitations Regarding Sales Activities Are Not Supported by the Record.***

Plaintiffs also misstate many facts regarding their sales activities themselves.  First, it is a gross misstatement that Plaintiffs' employment "included selling Humana products for part of each year."  Pls.' Mem. at p. 8.  It is undisputed that Plaintiffs' sold Medicare products all year long to various newly-eligible individuals and that they were required to sell other non-Medicare products year-round, as well.

Defendant is also perplexed by Plaintiffs' allegations that their ability to sell was limited by "supervisory oversight."  Pls.' Mem. at p. 16.  Because Plaintiffs' supervisors were paid and evaluated based on the sales performance of their team, it is absurd to think that their supervisors wanted to limit Plaintiffs' sales in any way, nor do Plaintiffs provide any support for this illogical allegation.

Equally as preposterous is Plaintiffs' statement that they "were not allowed to perform outside marketing to solicit their own customers, but instead were required to rely on leads provided within Humana that are delegated among the agents by their sales manager."  Pls.' Mem. at p. 17.  Obviously Plaintiffs were not only allowed, but expected, to generate their own leads.  Plaintiff Kowalczyk testified that new customers came from "Walmart, and then others would be the referrals from old clients, and then there would also be leads generated through Humana."  Kowalczyk Dep. Tr. at 111:16-22, attached to SOF at Ex. 2.  And Plaintiff Lane testified that she sold to customers who she had not received as a lead from Humana and that her commission contract provided that she received a higher commission if the sale was a result of her own lead, versus a lead from the company.  Lane Dep. Tr. at 64:21-65:15, attached hereto at

Ex. A.  Indeed, the Regional Sales Director testified that the goal was that sales made by Sales Representatives would be roughly fifty percent from company leads and fifty percent from their own soliciting and referral efforts.  DeVincentis Dep. Tr. at 36:23-37:4, attached hereto at Ex. B. Plaintiffs' claim that they were prohibited from performing outside marketing to solicit their own customers is contradicted by their own sworn testimony.

As is clearly evident from the Statement of Facts, making sales was the principal, main, and most important duty that Plaintiffs' performed for Defendant.  (*See* SOF §§ I through IX.) Plaintiffs were clearly hired to do so, paid to do so, and evaluated and compensated on how well they did so.  *Id.*

**D.**     ***Plaintiffs Were Customarily and Regularly Engaged Away from Humana's Place of Business with Regard to Their Sales Activities.***

As to the requirement that exempt sales activities be conducted away from the employer's place of business, Plaintiffs argue that this requirement is not satisfied because of the time they spent at their assigned Walmart and in their home office.   Plaintiffs appear to misunderstand two points regarding this requirement:   it pertains to where the sales work is performed and its frequency is limited to "customarily and regularly."  Such frequency need only be "greater than occasional," but is less than constant.  29 C.F.R. § 541.701.  Plaintiffs did not "occasionally" give sales presentations in customers' homes and other public places; they regularly (and indeed almost always) did so.  *See, e.g.*, *Billingslea v. Brayson Homes, Inc.*, 2007 WL 2118990, at *4 (N.D. Ga. 2007) (holding that engaging in sales activities away from the employer's place of business on a weekly basis satisfies the requirement).

**V.**     ***Conclusion***

In summary, Plaintiffs' mistaken belief that the outside sales exemption is limited to individuals who solicit new business, close the sale, and have no remaining contact with that

client lacks any understanding of the exemption.  First, they do not understand that the concept of "primary duty" recognizes that employees will engage in non-exempt work (sometimes significant non-exempt work) and still qualify for the exemption because the exempt work is nonetheless the most important aspect of the job.  Second, what qualifies as exempt work under the outside sales exemption is not limited only to sales duties.  It also encompasses otherwise non-exempt work that is incidental to the sales duties.  As is logical and clear from the case law, responding to service questions from customers to whom you made a sale fits squarely within such incidental exempt work.  As such, Plaintiffs clearly satisfy the outside sales exemption to the overtime requirements of the Fair Labor Standards Act (which in turn results in no claim under the state wage payment statute) and therefore Defendant's summary judgment motion should be granted.

RESPECTFULLY SUBMITTED,

DATED:  January 31, 2011                    CONSTANGY, BROOKS & SMITH, LLP

                                            /s/ Maureen R. Knight
                                            James M. Coleman *(Admitted pro hac vice)*
                                            Maureen R. Knight *(Admitted pro hac vice)*
                                            4100 Monument Corner Drive, Suite 520
                                            Fairfax, VA 22030-8609
                                            Telephone: (571) 522-6100
                                            Facsimile: (571) 522-6101

                                            STOEL RIVES, LLP

                                            James C. Dale, ISB No. 2902
                                            101 S. Capitol Blvd, Ste 1900
                                            Boise, ID 83702
                                            Telephone:  (208) 389-9000
                                            Facsimile:  (208) 389-9040

                                            Attorneys for Defendant

1305582.1

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2011, I served a copy of the foregoing document on

CM/ECF Registered Participants as reflected on the Notice of Electronic Filing as follows:


Julie Klein Fischer – jfischer@morrowfischer.com
Shelli D. Stewart – sstewart@morrowfischer.com


/s/ Maureen R. Knight
Maureen R. Knight (*Admitted pro hac vice*)